IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| PHILIP JOHN TUMMARELLO, | CV 19-183-M-DLC-KLD |
| Plaintiff, | |
| vs. | FINDINGS & RECOMMENDATION |
| STATE OF MONTANA DEPARTMENT OF HEALTH AND HUMAN SERVICES CHILD SUPPORT ENFORCEMENT DIVISION; RICHARD OPPER, DIRECTOR OF HEALTH AND HUMAN SERVICES; SUSZANNE HABBE, REGIONAL DIRECTOR MISSOULA CSED; MELISSA DARKO, INVESTIGATOR, MISSOULA CSED, | |
| Defendants. | |

Pro se Plaintiff Phillip John Tummarello brings this action alleging federal constitutional claims under 42 U.S.C. § 1983 against the above-named Defendants for enforcing his child support obligations and improperly reporting his child support arrearages. Defendants move to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) (Doc. 36), and Tummarrello has filed a Motion for Continuance to File Final Amended Complaint. (Doc. 40). For the reasons set forth

1

below, Defendants' motion should be granted, Tummarello's motion should be denied, and this matter should be dismissed.

## I.  **Background**

On November 15, 2019, Tummarrello filed this action against the State of Montana Department of Public Health and Human Services Child Support Division (CSED), former Department of Public Health and Human Services (DPHHS) Director Richard Opper, Montana Governor Steve Bullock, DPHHS director Suzanne Habbe, and CSED investigator Melissa Darko. (Doc. 1). The parties subsequently stipulated to dismiss Governor Bullock as a Defendant (Doc. 33 at 2), and the Court granted Tummarrello leave to file an Amended Complaint. (Doc. 34).

Tummarello filed his Amended Complaint on June 3, 2020.[1] (Doc. 35). Because Tummarello initially submitted his proposed Amended Complaint as an attachment in support of his motion for leave to amend, it does not have a case

---

[1] On July 1, 2020, Tummarello filed a Notice of Errata and re-submitted his Amended Complaint "to correct inadvertent clerical errors and clarify chronology." (Doc. 39 at 2). Defendants take the position that Tummarello's "corrected" Amended Complaint is ineffective without a motion and leave of Court. (Doc. 43 at 2). Nevertheless, in light of Tummarello's pro se status, the Court will refer to this most recent version of the Amended Complaint (Doc. 39-1) as the operative pleading for purposes of considering whether he has stated a claim for relief.

heading identifying the Defendants against whom he intends to maintain suit.

(Doc. 26-1). Nevertheless, the first sentence of the amended pleading makes clear

that Tummarrello is alleging claims against Opper, Habbe, and Darko "in their

individual and official capacities as agents" of CSED.[2]  (Doc. 39-1).

In the opening section, Tummarrello alleges that "Defendants collectively,

individually, and personally under color of authority, willfully, callously and

neglectfully, inflicted constitutional injuries upon Plaintiff through illicit

government seizures, violation of property rights, privacy and travel rights, and

due process rights enumerated in the First, Fourth, Fifth, Ninth, and Fourteenth

Amendments to the United States Constitution." (Doc. 39-1 at ¶ 2). He claims that

Defendants wrongfully established child support arrearages against him, falsely

reported those arrearages to credit bureaus, and impermissibly imposed a lien

against his property all based on a false affidavit submitted by his ex-wife. (Doc.

39-1 at 3-4).

In the supporting facts section of his Amended Complaint, Tummarello

begins by describing the state court child support proceedings that took place in

---

[2] To the extent Tummarrello's Amended Complaint can be construed as alleging claims against CSED, it fails to state a claim for relief. CSED is a state agency, which means that it cannot be sued under § 1983 for constitutional wrongs. See *Sanem v. Doe*, 2019 WL 1895044 (Apr. 29, 2019).

2009 and 2010. (Doc. 39-1 at ¶¶ 8-9). Tummarrello alleges that Darko first notified

him of child support arrearages against him in August 2014. (Doc. 39-1 at ¶ 12).

He states that in September 2014, he received several arrearage notices from CSED

in incorrect amounts of $18,867, $17,820, $6,000, and $4,000. (Doc. 39-1 at ¶ 13).

Tummarello accuses Defendants of reporting those "false arrearages to credit

bureaus" and refusing to consider the "exculpatory bank records" he provided.

(Doc. 39-1 at ¶ 12). Tummarello claims he then contacted Darko's supervisor,

Habbe, and told her that Darko "was acting on a knowingly false affidavit and was

conducting a biased investigation which refused exculpatory information and

violated a state court order for mediation." (Doc. 39-1 at ¶ 16).

Tummarello describes a medical support hearing that took place in October

2014, during which "Defendants made no effort to correct the false reporting of

arrearages." (Doc. 39-1 at ¶ 18). Tummarello alleges he again notified Defendants

"of potential harms to him as a direct consequence of false reporting of arrearages"

during a CSED child support hearing later that month, but they continued to treat

his ex-wife more favorably. (Doc. 39-1 at ¶ 19).

Tummarello claims that in November 2014 his loan agent notified him about

a CSED lien in the approximate amount of $20,000. (Doc. 39-1 at ¶ 19).The

following month, CSED issued an additional arrearage notice in the amount of

$7,293 and initiated garnishment proceedings against Tummarello's disability pension. (Doc. 39-1 at ¶¶ 17, 20). Tummarello states that he contacted CSED attorney Patrick Quinn in January 2015 to request assistance in removing the lien and addressing the false reporting of arrearages to credit bureaus. (Doc. 39-1 at ¶ 21). According to Tummarrello, Quinn retaliated against him by stating there was nothing more he could do and encouraging Tummarello to pursue a lawsuit against his ex-wife instead. (Doc. 39-1 at ¶ 21). Tummarrello claims that Quinn also retaliated against him by interjecting CSED into a court-ordered mediation around that time. (Doc. 39-1 at ¶ 18).

As a result of Defendants' conduct, Tummarello alleges he lost a refinancing in May 2015, was denied credit in October 2015, and lost out on a lower interest rate in November 2015. (Doc. 39-1 at ¶¶ 23, 25, 26). Tummarello states that in March 2019 he "was informed the CSED account remains on his credit" history, and explains that he has not been able to raise his credit score. (Doc. 39-1 at ¶ 27). Finally, Tummarrello alleges that in April 2020, Defendants retaliated against him for filing this lawsuit by sending him "a demand of proof of health insurance" for his oldest child, who was emancipated in 2014. (Doc. 39-1 at ¶ 7).

In the next section of the Amended Complaint, Tummarello sets forth five claims for relief. Count I alleges procedural and substantive due process violations.

(Doc. 39-1 at 14-17). Count II alleges Defendants violated his right to privacy under the Ninth Amendment to the United States Constitution by reporting false arrearages, and violated his due process rights as well as his Fourth Amendment right against unreasonable seizure by enforcing and collecting on his child support obligation. (Doc. 39-1 at 17-18). Count III seeks recovery for "emotional and health distresses" resulting from Defendants' alleged misconduct. (Doc. 39-1 at 18). Count IV is titled "disparate treatment," and seeks damages on the theory that Defendants consistently treated Tummarrello's ex-wife more favorably during the proceedings described above in violation of his due process rights. (Doc. 39-1 at 18-20). Count V alleges a First Amendment retaliation claim. (Doc. 39-1 at 21). In his prayer for relief, Tummarrello requests injunctive relief as well as compensatory and punitive damages. (Doc. 39-1 at 26).

Defendants move under Rule 12(b)(6) to dismiss all claims except for the alleged retaliation in April 2020 on the ground that they are barred by the applicable statute of limitations. With respect to the April 2020 retaliation claim, Defendants move to dismiss on the ground that Tummarrello has failed to plead facts that give rise to a retaliation claim. Defendants move to dismiss Tummarrello's claims against Opper on the additional ground that they are based on a theory of vicarious liability and are not actionable under § 1983.

## II.    <u>Motion to Dismiss</u>

### A.    Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court's standard of review under Rule 12(b)(6) is informed by the provision of Fed. R. Civ. P. 8(a)(2) which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting Rule 8). Although Rule 8(a)(2) does not require "detailed factual allegations," a plaintiff must set forth more than bare allegations that the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 677-78.

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678-79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A claim may be dismissed under

7

Rule 12(b)(6) when the running of the statute of limitations "is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 1996).

Where, as here, the plaintiff is proceeding pro se, the court has an obligation "to construe the pleadings liberally and to afford the [plaintiff] the benefit of any doubt." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). But even where the plaintiff is proceeding pro se, the complaint should be dismissed if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim." See *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1997). A pro se plaintiff must be given leave to amend unless it is "absolutely clear that the deficiencies of the complaint cannot be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007).

As a general rule, the court may not consider any materials outside the pleadings on a Rule 12(b)(6) motion. *Lee v. City Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The court may, however, consider documents attached to the complaint, matters that are subject to judicial notice, and documents necessarily relied on by the complaint and whose authenticity no party questions. See *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Lee*, 250 F.3d at 688-89 (9th Cir. 2001). "[R]ecords and reports of administrative bodies" are subject to judicial

notice, and may be considered by the court without converting a Rule 12(b)(6) motion to a motion for summary judgment. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1278, 1282 (9th Cir. 1986).

Defendants ask the Court to take judicial notice pursuant to Federal Rule of Evidence 201 of several orders and filings in the CSED administrative proceedings and subsequent judicial review action in state court. These evidentiary materials are attached to the Statement of Stipulated Facts previously agreed to by the parties. (Doc. 27). Consistent with the legal standard set forth above, the Court takes judicial notice of these materials and may consider them in determining whether the Amended Complaint states a claim for relief.

**B.      Statute of Limitations**

Tummarello brings his claims under 42 U.S.C. § 1983, which does not contain its own statute of limitations. *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). Thus, for claims under § 1983, federal courts apply the forum state's limitations period for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007) (quoting *Jones v. Blanas*, 393 F.3d 918,

927 (9th Cir. 2004)). In Montana, the statute of limitations for personal injury

actions is three years. Mont. Code Ann. § 27-2-204.

"Federal law determines when a cause of action accrues and the statute of

limitations begins to run for § 1983 claim." *Bagley v. CMC Real Estate Corp.*, 923

F.2d 758, 760 (9th Cir. 1991). Under federal law, a § 1983 claim "accrues when the

plaintiff knows or has reason to know of the injury which is the basis of the

action." *Maldonado v.* Harris, 370 F.3d 945, 955 (9th Cir. 2004). Accordingly,

Tummarello had three years from the date he first knew or had reason to know of

his injury within which to bring his § 1983 claims.

Taking the facts alleged in the Amended Complaint as true, Defendants

argue Tummarello's § 1983 claims accrued no later than January 2015. Because

Tummarrello did not file this action until November 2019, Defendants take the

position that his claims are barred by the three-year statute of limitations. The

Court agrees.

As described above, Tummarrello's § 1983 claims are premised on the

theory that Defendants violated his constitutional rights by wrongfully establishing

child support arrearages against him, falsely reporting those arrearages to credit

bureaus, and impermissibly imposing a CSED lien against his property.

Tummarello expressly alleges that he knew of the child support arrearages against

him by September 2014 (Doc. 39-1 at ¶ 13), and was notified about the CSED lien on his property in November 2014. (Doc. 39-1 at ¶ 19). Tummarrello further alleges that he notified Defendants of the "potential harms to him as a direct consequence of false reporting of arrearages" during a CSED administrative hearing in late October 2014, thereby demonstrating that he knew of the alleged false reporting to credit bureaus more than three years before he filed suit in November 2019. (Doc. 39-1 at ¶ 19). Even if that were not enough to establish knowledge of the alleged false reporting, in a January 2015 letter to CSED attorney Quinn, Tummarello referred to a "false CSED account claim" that was reported to credit bureaus and stated that he had advised CSED six months earlier that the information reported to the credit bureaus was incorrect.[3]  (Doc. 27-15). In addition, Tummarello specifically alleges that he lost a refinancing in May 2015, was denied credit in October 2015, and lost out on a lower interest rate in November 2015. (Doc. 39-1 at ¶¶ 23, 25, 26). Thus, taking the factual allegations in the Amended Complaint as true, Tummarello knew or had reason to know of the injuries which form the basis of his § 1983 claims as early as the fall of 2014, and

---

[3] Because the Amended Complaint refers to and relies on this letter (Doc. 39-1 at ¶ 21), and the parties do not dispute its authenticity (Doc. 27-15), the Court may consider the letter without converting Defendants' Rule 12(b)(6) motion to a motion for summary judgment.

certainly no later than the fall of 2015 – more than three years before he filed this action in November 2019. Because he did not bring his § 1983 claims against Defendants within the three years after accrual, they are barred by the statute of limitations.

In an attempt to avoid dismissal, Tummarello invokes the doctrine of equitable tolling. The Montana Supreme Court recognizes the doctrine of equitable tolling, which "arrests the running of statutes of limitations while the claimant reasonably and in good faith pursue one of several possible legal remedies." *Sorenson v. Massey-Ferguson, Inc.*, 927 P.2d 1030, 1032 (Mont. 1996). For equitable tolling to apply, a plaintiff "must first show a reasonable good faith pursuit of one of several possible remedies and then demonstrate the [following] three criteria …have been satisfied: (1) the defendant was notified timely within the statute of limitations by the filing of the first claim; (2) the defendant's ability to gather evidence for defense of the second claim was not prejudiced; and (3) the plaintiff reasonably and in good faith filed the second claim." *Lozeau v. Geico Indemnity Co.*, 207 P.3d 316, 319 (Mont. 2009).

In *Lozeau*, the Montana Supreme Court applied the doctrine of equitable tolling and allowed the plaintiff to proceed with a personal injury claim even though she filed suit more than three years after her cause of action accrued.

12

*Lozeau*, 207 P.3d 316. The plaintiff initially filed her claim in tribal court because the defendant was a tribal member, and the defendant's insurer moved to dismiss for lack of jurisdiction. *Lozeau*, 207 P.3d at 317. Concerned about the outcome of the jurisdictional challenge, the plaintiff filed a complaint in state court approximately one month later, "about six weeks after the three year anniversary of the accident," thereby missing the applicable limitations period. *Lozeau*, 207 P.3d at 318. Recognizing "that the issue of state and tribal jurisdiction can present a procedural quandary for litigants," the Court found the plaintiff had satisfied the threshold inquiry because her "filing of the action in Tribal Court was reasonably pursued and done in good faith." *Lozeau*, 207 P.3d at 320. The defendant did not dispute that she was timely notified within the statute of limitations by the filing of the first claim or that plaintiff's filing of the second claim in state court was reasonable and done in good faith. *Lozeau*, 207 P.3d at 320. The Court found the defendant was not prejudiced by the untimely filing because the plaintiff filed her state court complaint less than two months after the expiration of the limitation period while the tribal action was still pending, and made substantially the same allegations against the defendant that she had made in her tribal court complaint. *Lozeau*, 207 P.3d at 320.

Citing *Lozeau*, Tummarrello argues the statute of limitations should be

equitably tolled for the period of time during which he was pursuing a judicial

review action in state court. In December 2014, Tummarello filed a petition for

judicial review challenging CSED's administrative decision ordering the

withholding of child support. (Doc. 27-14). Tummarello challenged the support

order on multiple grounds, including claiming that "CSED illegally filed damaging

commercial credit reports knowing they were the result of a perjurious affidavit"

and violated his constitutional right to due process. (Doc. 27-14). In April 2015,

the state court issued an order dismissing the petition for judicial review for lack of

jurisdiction and entering judgment accordingly. (Doc. 27-17; Doc. 27-18).

Tummarrello appealed, and on October 18, 2016, the Montana Supreme Court

affirmed the district court's decision. (Doc. 27-20). Tummarrello filed a petition for

rehearing, which was denied on December 6, 2016. (Doc. 27-22). Tummarrello

filed this action on November 15, 2019 – less than three years later. (Doc. 1).

Tummarello argues he reasonably pursued his judicial review action and the

subsequent filing of this action in good faith. He claims he did not know what a §

1983 claim was when he filed his petition for judicial review, and he "could not

discern" the proper legal remedy to pursue. (Doc. 38 at 6). Tummarrello further

maintains he could not have filed this action without first exhausting his state

administrative remedies, and faults both CSED counsel Quinn and the state court for failing to advise him that he had a potential § 1983 claim.

Tummarello has not shown that the test for application of equitable tolling is satisfied, and unlike *Lozeau*, the equities do not favor application of the doctrine to toll the statute of limitations. First of all, for purposes of claim accrual, "the fact that a party with a cause of action has no knowledge of his rights, or even the facts out of which the cause arises, does not delay the running of the statute of limitations until he discovers the facts or learns of his rights under those facts." *Bennett v. Dow Chemical Co.*, 713 P.2d 992, 994 (Mont. 1986). See also Mont. Code Ann. § 27-2-102(2). In addition, Tummarello's argument that he was required to exhaust his state administrative remedies before bringing this suit is incorrect. See *Jones v. Mont. Univ. Sys.*, 155 P.3d 1247, 1255 (Mont. 2007) ("A party normally need not exhaust available state administrative remedies before seeking to vindicate a federal constitutional or statutory right through a § 1983 action filed in federal or state court."). Thus, the mere fact that Tummarrello was not aware that he could bring a claim under § 1983 does not justify equitable tolling.

For equitable tolling to apply, the filing of Tummarello's judicial review action must have been sufficient to timely notify Defendants of the claims against

them within the statute of limitations. Notably, however, Defendants were not parties to the judicial review action and Tummarello's petition for judicial review did not seek monetary damages against them. (Doc. 27-14). This suit is different in that it names Opper, Darko, and Habbe as defendants, asserts § 1983 claims for the first time, and requests compensatory and punitive damages which would been unavailable in the judicial review action. Under the circumstances, the Court finds that Tummarello's judicial review action was not sufficient to timely notify Defendants of the § 1983 claims now alleged against them. See e.g., *Erickson v. Croft*, 760 P.2d 706, 709 (Mont. 1988) (holding a Board of Realty Regulation complaint did not equitably toll the statute of limitations for a negligence claim because the Board had "no power to award damages" and thus the Board complaint did "not give adequate notice of the existence of a legal claim").

The Court also notes that, unlike the plaintiff in *Lozeau*, who filed in state court promptly upon learning of the jurisdictional challenge in tribal court, Tummarello persisted with his judicial review action even after the district court dismissed it and the Montana Supreme Court affirmed that dismissal. He then waited almost three years after the Montana Supreme Court denied his request for a rehearing to file the instant action. For these reasons, the Court agrees with

Defendants that the uncontested administrative record from the underlying CSED

case establishes that equitable tolling does not apply to the facts of this case.

Accordingly, with the exception of the alleged retaliation in April 2020,

Tummarello's § 1983 claims are all barred on statute of limitations grounds.

### C.    Retaliation

Count V of the Amended Complaint alleges a First Amendment retaliation

claim. (Doc. 39-1 at ¶¶ 45-46).

"A plaintiff may bring a Section 1983 claim alleging that public officials,

acting in their official capacity, took action with the intent to retaliate against,

obstruct, or chill the plaintiff's First Amendment rights." *Arizona Students'*

*Association v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). To state a

claim for First Amendment retaliation,

> the plaintiff must allege that (1) [he] engaged in constitutionally protected
> activity; (2) the defendant's actions would 'chill a person of ordinary
> firmness' from continuing to engage in the protected activity; and (3) the
> protected activity was a substantial motivating factor in the defendant's
> conduct – i.e., that there was a nexus between the defendant's actions and an
> intent to chill speech."

*Ariz. Students' Assn.*, 824 F.3d at 867.

Liberally construing Tummarello's amended pleading, he alleges two acts of

retaliation – neither of which states a claim for relief. First, he claims CSED

17

counsel Quinn advised him to initiate a legal action against his ex-wife instead of pursuing one against Defendants. (Doc. 39-1 at ¶ 45). Tummarello has not named Quinn as a defendant, however, and fails to identify any legal basis for holding Defendants liable for Quinn's alleged conduct. In addition, Tummarello has not alleged or identified any protected activity that might have prompted Quinn's alleged retaliation. This aspect of Tummarello's First Amendment retaliation claim thus fails as a matter of law.

Second, Tummarello alleges that in April 2020, Defendants retaliated against him for filing this lawsuit by sending him a demand for proof of health insurance for his oldest child, who was emancipated in 2014. (Doc. 39-1 at ¶46). Even accepting this allegation as true, the fact that Defendants sent Tummarello a request for proof of health insurance that listed his emancipated son's name is not an action that would plausibly "chill a person of ordinary firmness" from continuing to pursue a lawsuit against Defendants. In addition, Tummarello does not allege that he was in fact chilled or otherwise deterred from pursuing his lawsuit, and has not alleged that he was adversely affected by receiving a request for proof of health insurance in the mail. Tummarello thus fails to state a claim for relief, and his First Amendment retaliation claim should be dismissed accordingly.

**D.    Vicarious Liability**

Even if Tummarello's § 1983 claims were not subject to dismissal on statute of limitations grounds, Opper moves to dismiss the individual capacity claims asserted against him for the additional reason that Tummarello has not alleged facts showing that Opper personally participated in the alleged constitutional deprivations.

To state claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution for laws of the United States was violated and (2) that the alleged violation was committed by a "person" acting under the color of state law. See *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Tummarello has not alleged any facts demonstrating that Opper was personally involved in the alleged false reporting of child support arrearages, the imposition of the lien, or the alleged retaliation. Because Tummarello has not alleged any facts that plausibly suggest Opper had any personal involvement in the alleged constitutional deprivation, he fails to state a claim for relief against Opper in his individual capacity under § 1983.

## III.   **Motion to Continue**

19

Tummarello has also filed a motion to continue the deadline for amending the pleadings until August 1, 2020 on the ground that he may need to amend his complaint for a second time after conducting discovery. (Doc. 40).

### A.    Procedural Background

Tummarello filed his original Complaint on November 15, 2019. (Doc. 2). On February 26, 2020, Defendants Opper, Bullock and CSED filed a motion to dismiss for failure to state a claim (Doc. 16), and Defendants Darko, Habbe and CSED filed an answer. (Doc. 15). In response to Defendants' initial motion to dismiss, Tummarello filed a motion for leave to amend his Complaint. (Doc. 23). Following a preliminary pretrial conference on June 2, 2020, the Court issued a scheduling order establishing July 1, 2020, as the deadline for amending the pleadings. (Doc. 33). The Court also granted Tummarello's motion for leave to amend, and his proposed Amended Complaint was filed accordingly. (Doc. 35). After Defendants filed the pending motion to dismiss, Tummarello filed a Notice of Errata and re-submitted his Amended Complaint "to correct inadvertent clerical errors and clarify chronology." (Doc. 39 at 2). As explained above, the Court has accepted Tummarello's "corrected" Amended Complaint as the operative pleading.

On the July 1, 2020 deadline for amending the pleadings, Tummarello filed a Motion to for Continuance to File Final Amended Complaint along with his

response to Defendants' motion to dismiss. (Doc. 40).

### B.    Legal Standard

Generally speaking, leave to file an amended pleading should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Where a party seeks leave to file an amended pleading after the deadlines established by the scheduling order has passed, however, Rule 16(b) provides the controlling standard. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Rule 16(b) requires that a party show good cause for amending the scheduling order to allow the filing of an amended pleading. *Coleman*, 232 F.3d at 1294.

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment...." *Johnson*, 975 F.2d at 609.   Good cause for modification exists if the deadlines in the pretrial schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609 (quoting Fed. R. Civ. P. 16 Advisory Committee's Notes (1983 Amendment)). Carelessness, on the other hand, "is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d

21

at 609.

"Although diligence is the main focus of the good cause inquiry," this is not
to say that "the existence or degree of prejudice to the party opposing the
modification" is necessarily irrelevant. *C.F. v. Capistrano Unified School Dist.*,
656 F.Supp.2d 1190, 1196 (C.D. Cal. 2009) (citing *Johnson*, 975 F.2d at 609). The
"existence or degree of prejudice to the party opposing the modification might," in
some cases, "supply additional reasons to deny a motion" for leave to amend.
*Johnson*, 975 F.2d at 609. But if the Court finds as a preliminary matter after
examining "the moving party's reasons for seeking modification" that the party
"was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. See also *In re
Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 737 (9th
Cir. 2013) (upholding denial of motion to amend where "the party seeking to
modify the scheduling order has been aware of the facts and theories supporting
amendment since the inception of the action.").

If the court finds good cause for seeking leave to amend after the scheduling
order's deadline, it must then consider whether amendment should be allowed
under Rule 15(a). Because leave to amend "shall be given freely when justice so
requires," Rule 15 should be applied with "extreme liberality." *Eminence Capital,
LLC v. Aspeon, Inc.*, 366 F.3d 1048, 1051 (9th Cir. 2003). Whether to grant leave to

amend is left to the court's discretion. *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007). In determining whether to grant leave to amend, the court considers the following factors: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

### C.      Good Cause

Because Tummarello is seeking leave to continue the July 1, 2020 deadline for amending the pleadings to allow for the filing of a second amended complaint he must satisfy Rule 16(b)'s good cause standard. Tummarello contends there is good cause for extending the deadline because he initially misunderstood how to conduct discovery, and has filed this motion to continue to avoid "having to come back at a later date after discovery has been initially completed, to ask the Court's leave, to file yet another amended complaint." (Doc. 40 at 3).

Defendants argue Tummarello has not shown good cause for modifying the scheduling order because (1) he did not act diligently in objecting to the July 1, 2020 deadline to amend; (2) they will be prejudiced if the deadline is extended and Tummarello is allowed to file a second amended complaint as a matter of course; and (3) any future amendment would be futile. The Court agrees.

The Court held the preliminary pretrial conference in this case on June 2, 2020, at which time Tummarello was aware that he had not any conducted discovery. At the preliminary pretrial conference, the Court granted Tummarello leave to file his lodged first Amended Complaint. If Tummarello believed he would need to conduct discovery before filing a "final" second amended complaint, he could have raised that argument at the preliminary pretrial conference or in the weeks preceding the July 1, 2020 deadline but did not do so.

Even assuming in light of Tummarello's pro se status that he was sufficiently diligent in attempting to meet that deadline and in seeking an extension, any future amendments would be futile. As discussed at length above, the evidentiary materials attached to the parties stipulated facts establish that, with the exception of the April 2020 retaliation, Tummarello's claims are barred by the statute of limitations. There is no discovery that will change the facts as set forth in those evidentiary materials, which, as discussed above, are properly considered on a Rule 12(b)(6) motion. Tummarello does not explain what facts he hopes to discover that might somehow impact the statute of limitations analysis or render his April 2020 retaliation claim actionable.

Finally, Defendants would be prejudiced if the scheduling order is modified to extend the pleadings deadline and allow Tummarello to file a second amended

complaint without first obtaining leave of Court. Under Rule 15(a)(1), a plaintiff is entitled to only one amendment as a matter of course within twenty-one days of the responsive pleading. At the preliminary pretrial conference, the Court allowed Tummarello to amend his pleading as a matter of course and his Amended Complaint was docketed accordingly. Defendants' first motion to dismiss was rendered moot by the filing of Tummarello's Amended Complaint, and Defendants have since expended additional time and incurred additional expenses in preparing and filing their second motion to dismiss. If Tummarello's motion for a continuance is granted, and the scheduling order is modified to allow Tummarello to file a second amended complaint without seeking leave of court, Defendants second motion to dismiss would again be rendered moot. As discussed above, the allegations in the Amended Complaint, read in conjunction with the evidentiary materials of record that are properly before the Court, demonstrate that Tummarello fails to state a claim for relief. Allowing Tumarello to file a future second amended complaint without seeking leave of Court in a futile attempt to correct these deficiencies would prejudice Defendants.

Accordingly, the Court concludes Tummarello has not demonstrated good cause to modify the scheduling order to allow for the filing of a Final Amended Complaint.

## IV.   **Conclusion**

For the reasons outlined above,

IT IS RECOMMENDED that Defendants' Rule 12(b)(6) Motion to Dismiss (Doc. 36) be GRANTED, Tummarrello's Motion for Continuance to File Final Amended Complaint (Doc. 40) be DENIED, and this case be dismissed.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 4th day of August, 2020.

Kathleen L. DeSoto
United States Magistrate Judge

26